## ROYAL CALL *vs.* SOLOMON C. CALEF.

A. had an interest in the exclusive use, in Manchester, (N. H.) of a certain patent machine, and B. had an interest in the exclusive use of the same machine in Lowell :  S. was using said machine, in Manchester, without right :  A. gave to B. a power of attorney, authorizing him to take such steps, in A.'s name, as B. might judge to be necessary or expedient, by suit at law or otherwise, to prevent S. from using, letting or selling said machine, in Manchester, and also authorizing B. to sell to S. the right to use said machine in Manchester :  And by a parol agreement between A. and B., B. was to have, as his compensation for his services under said power of attorney, one half of what he should recover or receive of S. :  B. rendered services, under said power, for which he was entitled, by said parol agreement, to twenty five dollars :  A. afterwards assigned his right to the use

Call *v.* Calef.

of said machine to C., with notice of B.'s claim on A., and with authority to C. to revoke said power of attorney given to B., upon paying B. twenty five dollars: C promised B. to pay him said sum, and B. consented to the revocation of the power of attorney: B. afterwards brought an action against C. to recover said sum of twenty five dollars. *Held,* that the parol agreement between A. and B. was not illegal and void on the ground of maintenance and champerty, but was a valid agreement; that C.'s promise to pay B. said sum was on a good and sufficient consideration; and that the action could be maintained.

ASSUMPSIT, on the money counts, to recover twenty five dollars. At the trial in the court of common pleas, before *Wells,* C. J. the plaintiff gave evidence that, on the 19th of February 1845, the firm of Harry Leeds & Co. of Manchester (N. H.) made to him a power of attorney, the purpose of which was expressed in these words: "For us, and in our names, to take such steps as he shall judge to be necessary and expedient, either by suit at law or otherwise, to prevent Baldwin & Stevens of Manchester from running or using, in any way, or letting to others, or selling, Hutchinson's Patent Planing Machine, which we have the exclusive right to use in the town of Manchester, and the exclusive right to sell the right to use the same in the said town of Manchester. And we further authorize and empower our said attorney, for us, and in our name, to sell to said Baldwin & Stevens, at such price as he shall think reasonable, the right to use one, and one only, of Hutchinson's Patent Planing Machines in said town of Manchester. And we hereby ratify and confirm all the lawful doings of our said attorney in the premises, and give him power to do all things necessary to the execution of this trust, as fully as we ourselves could do, if personally present and acting in the premises."

The plaintiff also gave evidence that, at the time when this power of attorney was given to him, the said Harry Leeds & Co. claimed to be the sole owners of the Hutchinson patent, for the said town of Manchester, and that the plaintiff was largely interested in the same patent right, in the city of Lowell; and he offered to prove that Baldwin & Stevens were running one of said planing machines in Manchester, alleging that the patent was void. It was in evidence

that when said power of attorney was given, it was agreed between the parties thereto that the plaintiff was to receive, for his personal services rendered under said power, one half of all that he might receive or collect by virtue of said power; and that said power was executed at said Manchester.

The plaintiff also offered to give evidence tending to prove that he had rendered services, in selling said machine, under said power of attorney, and that, after said services had been rendered, the said power was given up, and that the defendant became liable to pay the sum of twenty five dollars for such services and the giving up of said power.

The judge ruled that the contract made by the parties to said power of attorney, as to the manner in which the plaintiff should be paid for his services, was void, as against the policy of the law, and illegal, and that no action could be maintained for services rendered under said power; and he directed a verdict for the defendant, which was returned by the jury. The plaintiff alleged exceptions.

Before the argument, the parties agreed that the evidence which the plaintiff offered to give at the trial, and which was contained in depositions, should be considered by the court, and that the bill of exceptions should be deemed amended accordingly. The additional facts, contained in those depositions, are stated in the opinion of the court.

*J. G. Abbott*, for the plaintiff.

*Morse*, for the defendant.

SHAW, C. J. As we understand the case, it was as follows. Leeds & Co. claimed to have an interest in the exclusive use of a patent planing machine in the town of Manchester, N. H., in which town Baldwin & Stevens were working the same machine, as Leeds & Co. alleged, without right. Call, the plaintiff, had an interest in the same patent at Lowell. Leeds & Co. executed a power of attorney to Call, the plaintiff, authorizing him, by suit or otherwise, to restrain Baldwin & Stevens from using the machine at Manchester, and promised him half of what he should recover or receive for his compensation. Call took some measures under this authority,

and afterwards Leeds & Co. assigned their interest to the defendant, Calef, with notice of Call's claim, and with power to revoke the power given to Call upon paying him what was due to him. Calef and Call had an interview, at which the former promised to pay the plaintiff twenty five dollars for his services, for which this suit is brought, and Call consented to the revocation of the power of attorney. The defence is, that this original agreement between the plaintiff and Leeds & Co. was void, on the ground of maintenance and champerty.

The court are of opinion, that this forms no good defence. Manchester and Lowell were towns near each other; and the unauthorized use of the patent right in one would diminish the value and profits of the patent in the other. Therefore the plaintiff had a direct interest, concurrent with that of Leeds & Co., in preventing the violation of the patent right, so that an agreement to act in the name of the patentee, or his assigns, to prevent such violation, and bring suits, if necessary, for that purpose, in the benefit of which he would largely, though indirectly, share, was not such unlawful maintenance or champerty as to render the agreement void.

There was a good consideration for this promise from the defendant to the plaintiff, in this: Leeds & Co. assigned their rights to the defendant, and authorized him to revoke the plaintiff's authority, on payment of his costs, and the assent of the plaintiff to such revocation constituted a good consideration for the express promise.

*Verdict set aside, and a new trial ordered.*